UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CECIL SHANNON,

                               Plaintiff,

       vs.                                   9:04-CV-408
                                            (J. Kahn)

DR. LESTER WRIGHT, et al.,

                               Defendants.

_____

APPEARANCES                      OF COUNSEL

CECIL SHANNON
Plaintiff pro se

ELIOT SPITZER                   MEGAN M. BROWN
Attorney General of the          Asst. Attorney General
State of New York
Attorney for defendants

## ORDER and REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff alleges that defendants denied

him constitutionally adequate medical care.  Plaintiff seeks substantial monetary

damages.

Presently before the court are two motions.  Defendants[1] have moved to dismiss

---

[1] The only two defendants that have been served are Dr. Mamus and Lester Wright.  However, defense counsel also argues that the case should be dismissed against all the defendants based upon statute of limitations grounds.

the complaint for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) (Dkt. No. 21).  Plaintiff has opposed the motion to dismiss. (Dkt. No. 24).  Plaintiff has also moved to amend his complaint pursuant to FED. R. CIV. P. 15. (Dkt. No. 25).  Defendants oppose the amendment. (Dkt. No. 27).  For the following reasons, this court agrees with defendants and will deny the motion to amend and recommend dismissal of this action.

## DISCUSSION

1.   **Motion to Dismiss**

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)(citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate*, 378 U.S. 546 (1964)(per curiam)).

In determining whether a complaint states a cause of action, great liberality is afforded to pro se litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).  For purposes of a Rule 12(b)(6) motion, the "complaint" includes any written instrument attached to the complaint and any statements or documents incorporated into it by reference. *Gant v. Wallingford Bd. of Education*, 69 F.3d 669, 674 (2d Cir. 1995)(citations omitted).

2

**2.     Facts and Procedural History**

Plaintiff filed the original complaint in this action on April 12, 2004.  The

complaint itself was dated merely "April 2004." (Dkt. No. 1 at p.5).  On April 20,

2004, Judge Kahn issued a conditional order of dismissal, holding that the complaint

did not comply with FED. R. CIV. P. 8 & 10, and ordering plaintiff to file an amended

complaint or his case would be dismissed. (Dkt. No. 4).  On April 30, 2004, plaintiff

filed an "Amended Complaint". (Dkt. No. 5).  Strangely enough, the amended

complaint was dated April 8, 2004, prior to Judge Kahn's order. (Dkt. No. 5 at p.5).

On May 6, 2004, Judge Kahn accepted the amended complaint and ordered

service on defendants. (Dkt. No. 6).  Although defendants Lester Wright and Dr.

Mamus were ultimately served (Dkt. Nos. 11 & 13), summonses were returned

unexecuted as to defendants Dr. Robert Cohen, Dr. Kluwe, and Nurse Administrator

Brian Lecuyer. (Dkt. Nos. 10 & 12).  The Marshal's Service advised plaintiff that

there had been a problem with service of process.  Plaintiff wrote to the court

requesting help with service, because he had been informed that defendant Cohen no

longer worked for the Department of Correctional Services (DOCS) and that Dr.

Kluwe and Nurse Administrator Lecuyer no longer worked at Bare Hill Correctional

Facility. (Dkt. No. 19).

On October 29, 2004, defendants Wright and Manus filed a motion to dismiss

the complaint pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 21).  Plaintiff responded

in opposition to the motion to dismiss, but also moved to amend his complaint, and submitted a proposed amended complaint. (Dkt. Nos. 24 & 25). On November 17, 2004, a letter was written by a Pro Se Staff Attorney to William M. Gonzalez, Esq., Deputy Counsel of DOCS in an attempt to obtain current addresses for the defendants who had not been served. (Dkt. No. 23). It appears that Attorney Gonzalez never responded to the letter.

In his ***first amended***[2] complaint, plaintiff alleges that in November of 1998, while he was incarcerated at Green Haven Correctional Facility[3], plaintiff was called to the infirmary to have a consultation with Dr. Cohen. (Dkt. No. 5 at ¶ 7). According to plaintiff, the consultation was for the purposes of taking a blood test prior to starting a treatment for Hepatitis C. Plaintiff then states that on December 24, 1998, he was again called to the infirmary to meet with Dr. Mamus, who gave him the results of the blood test, but allegedly told plaintiff that the promised Hepatitis C treatment was going to be delayed because of the cost, and that plaintiff would have to wait, but that "things should be cleared up soon." (Dkt. No. 5 at ¶ 8).

Plaintiff alleges that on February 6, 1999, he began experiencing severe pain on the right side of his body, signed up for sick-call, but was not treated. *Id.* at ¶ 9.

---

[2] Plaintiff's first amended complaint was the complaint that he was ordered to file by Judge Kahn to avoid dismissal pursuant to FED. R. CIV. P. 8 & 10.

[3]The court notes that Green Haven is not in the Northern District of New York.

Instead, plaintiff was sent back to his cell block.  Plaintiff states that he filed a

grievance on February 9, 1999 complaining about the events at the February 6 sick

call. *Id.* at ¶ 10.  Plaintiff states that on April 22, 1999, he wrote to "the Honorable

Justice Robert Ward"[4] regarding the Green Haven medical practices. *Id.* at ¶ 11.

Plaintiff states that Judge Ward wrote back to plaintiff, telling him that the judge

would contact Dr. Cohen, and that plaintiff's complaints would be forwarded to Dr.

Cohen to "look into." *Id.* at ¶ 12.  Plaintiff states that Dr. Cohen never contacted

plaintiff, and plaintiff did not receive his promised treatment. *Id.*

Plaintiff states that in March of 2000, he was transferred to Bare Hill

Correctional Facility.[5] *Id.* at ¶ 13.  The complaint then states that he informed his

"medical provider" about the events at Green Haven and how worried plaintiff was

about his liver condition.  Plaintiff states that on August 18, 2000, he was taken to

Albany Medical Center to have a liver biopsy done because of the alleged failure of

the medical staff to properly treat his liver condition and to determine whether

"plaintiff [was] in fact a candidate for the treatment of Interferon and Ribavirin... ." *Id.*

at ¶ 14.  Plaintiff alleges that more blood work was done, and in September of 2000,

---

[4] The court assumes that plaintiff is referring to United States District Judge Robert J. Ward,
now a Senior U.S. District Court Judge in the Southern District of New York.  The court makes this
assumption because plaintiff indicates in the amended complaint that Judge Ward had written a
decision in *Milburn v. Coughlin*, 79 Civ. 5077.  This appears to be a federal docket number, and
Judge Ward is certainly a Federal District Court Judge.

[5] Bare Hill is in the Northern District of New York.

he was called to the infirmary, where someone told him that he was a candidate for the above drug treatment. *Id.* at ¶ 15.

Plaintiff alleges that he filed a grievance on October 18, 2000 because he still had not received any treatment. *Id.* at ¶ 16. Plaintiff states that his laboratory results were not received until the grievance had been investigated and accepted. *Id.* On December 18, 2000, plaintiff states that he had a "tele-med" consultation with a specialist named Dr. Rogers, who allegedly advised plaintiff that the conference was to determine the status of his liver and formulate a treatment. *Id.* at ¶ 17. Plaintiff states that Dr. Rogers told plaintiff that his liver was scarred, and told plaintiff that Dr. Rogers would formulate a treatment plan and have it sent to the facility medical department. *Id.* at ¶ 18.

Plaintiff states that he then continued to attend sick-call, complaining of severe pain on the right side of his body. *Id.* at ¶ 19. Plaintiff claims that he decided to write to defendant Brian Lecuyer, the Nurse Administrator at Bare Hill. *Id.* Plaintiff states that on February 22, 2001, defendant Lecuyer called plaintiff to the infirmary to tell him that he would be placed on the list to see the doctor in order to determine whether the pain on plaintiff's right side was related to the liver disease. *Id.* at ¶ 20. Plaintiff states that on March 12, 2001, defendant Dr. Kluwe told plaintiff that his complaints of pain were due to the liver disease, but that plaintiff could not get any treatment until

6

the "paper work" was sent to Albany to the "Chief medical officer." *Id.* at ¶ 22.[6]

Plaintiff states that he contacted a person named Ms. Wells at Prisoner's Legal Services, who investigated the matter and wrote back to plaintiff on March 31, 2001, stating that Dr. Rogers had ordered that plaintiff start the treatments on December 18, 2000. *Id.* at ¶¶ 23-24. Plaintiff then alleged various injuries that he suffered as a result of the "continuing wrong." *Id.* at ¶¶ 26-27.

Plaintiff also states that on May 7, 2001, he began a lawsuit in the New York State Court of Claims alleging the same facts as in this case. At the time plaintiff filed his original, first amended, and proposed second amended complaint, he indicated that the Court of Claims action was still pending.

The proposed second amended complaint that plaintiff has now submitted with his motion to amend is identical to the first amended complaint, with an addition to the last paragraph. In the proposed amended complaint, dated November 23, 2004, plaintiff states that Dr. Lester Wright created a policy which allowed the lengthy delay in plaintiff receiving the ordered treatment. Proposed Amended Complaint at ¶ 27. Plaintiff also makes a confusing statement in that paragraph relative to a "new policy" about which plaintiff is complaining. The first amended complaint only named defendant Wright in the caption, but never mentioned how Wright had allegedly been

---

[6] The court notes that both plaintiff's first amended complaint and his proposed second amended complaint are missing a paragraph 21. The numbers go from ¶ 20 to ¶ 22.

involved in the plaintiff's claimed deprivations.  The court also notes that in plaintiff's response to the motion to dismiss, he states that he ultimately received his treatments in March 2002. (Dkt. No. 24 at p.3).

**3.**    **Statute of Limitations**

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985).  In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5).  Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action.

Federal law, however, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999)(citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992)), *cert. denied*, 120 S. Ct. 363 (1999).  Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)(internal quotation marks omitted)).

Equitable tolling of the statute of limitations allows the court to extend the limitations period as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996)(citation omitted).  Courts have applied this

doctrine as a matter of fairness when the plaintiff has been prevented in some "extraordinary way" from exercising his rights or has asserted his rights in the wrong forum. *Id.* (citing *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir.), *cert. denied*, 474 U.S. 851 (1985)).  However, the plaintiff must have exercised "reasonable diligence" during the period he seeks to have equitably tolled. *Id.* (citing *Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993)).  The burden of showing that equitable tolling should be applied lies with the plaintiff. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

Additionally, courts have recognized the concept of continuing violation. *See e.g. Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *Shannon v. Recording Industry Ass'n of America*, 661 F. Supp. 205, 210 (S.D. Ohio)(citation omitted). However, the court must distinguish between a "continuing violation" and a violation with "continuing consequences." *Shannon*, 661 F. Supp. at 210 (citing *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981).  A single violation with continuing consequences ***does not extend the accrual*** of the statute of limitations past the original act. *Id*.  *See also Doe v. Blake*, 809 F. Supp. 1020, 1025 (D. Conn. 1992)(a continuing violation is occasioned by continuing unlawful acts, not by continued ill effects from the original violation).

In this case, plaintiff filed his original complaint on April 12, 2004. (Dkt. No. 1).  A *pro se* inmate's papers are deemed filed when the inmate gives the papers to

prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 273 (1988).  Since the exact date of mailing in this case is not known, the court looks to the date that plaintiff signed his original complaint.  Plaintiff did not put a specific date on the original complaint, merely signing it "April, 2004".  The first amended complaint was signed April 8, 2004.  Giving plaintiff the greatest liberality, the court will use April 1, 2004 as the date plaintiff filed the action.  Three years prior to April 1, 2004 is April 1, 2001.  Thus, in general, absent equitable tolling, any actions by defendants occurring prior to April 1, 2001 are barred by the statute of limitations.

## A.  Defendants Mamus and Cohen

As stated above, in this case only defendants Wright and Mamus have been served.  Dr. Mamus worked at Green Haven Correctional Facility.  Plaintiff states that in March of *2000*, he had already been transferred from Green Haven to Bare Hill.  Dr. Mamus's care of plaintiff terminated when plaintiff was transferred to Bare Hill.  The only mention of Dr. Mamus in the complaint is in paragraph eight, and states that plaintiff went to the infirmary to see Dr. Mamus on December 24, 1998.  Dr. Mamus allegedly gave plaintiff the results of some blood tests and told plaintiff that his treatment was being delayed due to cost.  However, there is no further mention of Dr. Mamus in the complaint.

In fact, although Dr. Cohen has not been served, he too worked at Green Haven Correctional Facility, and his care of plaintiff also ended when plaintiff was

transferred to Bare Hill.  Since any actions taken by the Green Haven defendants would have been prior to March of 2000, and their care of plaintiff ended when he was transferred, the case against them is barred by the statute of limitations.  Even assuming the truth of plaintiff's statements, defendants Mamus and Cohen's allegedly unconstitutional conduct would have occurred prior to April 1, 2001, and their care of plaintiff did not continue after he was transferred.  Neither defendant could have been responsible for plaintiff's care after his transfer to Bare Hill.

There is also no reason for equitable tolling in the case of the Green Haven defendants.  Plaintiff alleges that on May 7, 2001, he brought a prior lawsuit in the New York State Court of Claims alleging the ***same set of facts*** as in this action, but that at the time plaintiff filed this complaint, the Court of Claims action was still pending.  Thus, it is clear from plaintiff's own statements that he was not prevented from filing an action, he merely chose to file an action in the New York Court of Claims instead of this court until April of 2004.  Thus, equitable tolling would not apply, and the case may be dismissed at to defendants Mamus and Cohen.

Plaintiff also alleges that his claim involves a "continuing violation".  Since defendants Mamus and Cohen did not continue to treat plaintiff after he was transferred to Bare Hill, they could not be responsible for any alleged continuing unlawful acts, including a delay of treatment past the time that plaintiff was transferred.  Thus, neither of these defendants would be subject to the concept of a

11

"continuing violation."

## 4.   __Respondeat Superior__

The court would point out that the neither the original complaint (Dkt. No. 1), nor the first amended complaint (Dkt. No. 5) mention defendant Wright in anything but the caption of the complaint.  Plaintiff has moved to amend his complaint to add paragraph 27, claiming that defendant Wright "created a policy" or "set in motion a series of events" that caused the delay in plaintiff's treatment.

Defendants oppose the motion to amend, arguing that even the new paragraph 27 would not survive a motion to dismiss, thus, the amendment would be futile. Generally, the court has discretion whether or not to grant leave to amend [a pleading]. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, in exercising this discretion, the court must act pursuant to Fed. R. Civ. P. 15(a), granting leave to amend "freely ... when justice so requires." Fed. R. Civ. P. 15(a); *Id*. at 182.  In deciding whether to exercise its discretion, the court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party.  *Evans v. Syracuse City School District*, 704 F.2d 44, 46 (2d Cir. 1983) (citing *Foman*, 371 U.S. at 182).  The court must also examine whether there will be prejudice to the opposing party. *Kovian v. Fulton County National Bank*, 86-CV-154, 1992 U.S. Dist. LEXIS 7023 (N.D.N.Y. May 13, 1992).  Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to

deny leave to amend. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)(citations omitted).

Personal involvement is a prerequisite to the assessment of damages in civil rights actions. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087 (1978). The doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved, and thus be subject to individual liability, in a constitutional deprivation. A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id*. A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id*. Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*.

Defendant Wright is the Chief Medical Officer for the Department of Corrections and works in Albany, New York, not at any particular correctional

13

facility.  As stated above, it is not until the proposed second amended complaint that plaintiff makes ***any*** factual allegations against defendant Wright, and then states that defendant Wright created a policy that caused the delay in plaintiff's treatment.  Proposed Second Amended Complaint ¶ 27.  Plaintiff then states that one of the "new policies" involves "change of request forms" that caused a lengthy delay in plaintiff's treatment.  Plaintiff does ***not specify*** how these new forms caused a delay in his treatment.  This is the first time that plaintiff mentions forms in his complaint, and there is no indication that defendant Wright was aware of plaintiff's case or that defendant Wright knew that plaintiff apparently did not receive his treatment when it was allegedly ordered by Dr. Rogers on December 18, 2000.

Even in the proposed second amended complaint, plaintiff is basically attempting to hold defendant Wright liable because of his supervisory position which is an inappropriate basis for liability under section 1983.  Thus, plaintiff has alleged insufficient personal involvement by defendant Wright.[7]  Because the proposed second amended complaint would not withstand a motion to dismiss, the court will deny the motion to amend and recommend dismissal of the complaint as against defendant Wright.

---

[7] The court also notes that plaintiff puts no dates in the paragraph in which he now mentions defendant Wright.  Thus, this court will assume that plaintiff's allegations against Wright continued until plaintiff received treatment in 2002.  The court will simply assume that the statute of limitations would not prevent the case against Wright, and instead will recommend dismissal based on the lack of personal involvement.

14

**5.**     **Defendants Lecuyer and Kluwe**

Neither of these last two defendants have been served in this action.  Both defendants worked at Bare Hill Correctional Facility.  The court, however, will review the claims that plaintiff is attempting to make in this action as against these remaining two defendants.  The court notes that 28 U.S.C. § 1915(e) (2)(B)(ii) provides that the court may dismiss an in forma pauperis action at any time if the court finds that the action fails to state a claim on which relief may be granted.

The only paragraphs of either the first amended or the proposed second amended complaint that mention defendant Lecuyer are paragraphs 19 and 20.  In paragraph 19, plaintiff alleges only that he "decided to write to the facility nurse administrator (Brian Lecuyer)."  In paragraph 20, plaintiff states that on February 22, 2001, defendant Lecuyer called plaintiff to the infirmary to tell him that he would place the plaintiff on the list to see the doctor.  There are no further allegations against this defendant.  The next paragraph indicates that plaintiff saw Dr. Kluwe on March 12, 2001.

There seems to be no claim of any violation against defendant Lecuyer.  Plaintiff only alleges that he contacted defendant Lecuyer, Lecuyer put plaintiff on the list to see the doctor, and plaintiff did see the doctor.  Plaintiff does not claim that the delay in seeing Dr. Kluwe was unusual or that defendant Lecuyer knew anything more about the plaintiff than he wished to see a doctor about his condition.  First, the court

would point out that plaintiff's ***only alleged contact*** with defendant Lecuyer occurred prior to April of 2001, and thus, any claim against him would be barred by the statute of limitations.

Additionally, there is really no constitutional claim stated against defendant Lecuyer.  In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff must allege that his access to physicians for necessary medical care was unreasonably delayed or denied, or that prescribed medical treatment was not administered. *Tomarkin v. Ward*, 534 F. Supp. 1224, 1240 (S.D.N.Y. 1982) (citing *Todaro v. Ward*, 431 F. Supp. 1129, 1133 (S.D.N.Y.)), *aff'd*, 565 F.2d 48 (2d Cir. 1977).

The court would point out that disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id*. (citations omitted). An inmate does not have the right to treatment of his choice. *Id*. (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988) Additionally, negligence by physicians, even amounting to malpractice does not become a constitutional violation because the plaintiff is an inmate. *Estelle*, 429 U.S.

at 107. *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.

From the face of the complaint, it is unclear what plaintiff alleges against defendant Lecuyer.  It is unclear how plaintiff claims that defendant Lecuyer could have been responsible for any delay in medical treatment when all he did was place plaintiff's name on a list to see the doctor as requested by plaintiff.  There is no indication that defendant Lecuyer was responsible for obtaining plaintiff's treatment or that he knew that plaintiff's treatment had already been ordered on December 18, 2000 and was ignoring this order.  Thus as the complaints (both first amended and proposed amended complaint) do not state any claim as against defendant Lecuyer that occurred within the statute of limitations.

The court also notes that in his complaints, plaintiff uses the word "malpractice" to refer to defendants' conduct.  (Dkt. No. 5 at ¶ 26 and Proposed Amended Complaint ¶ 26).  As stated above, malpractice itself does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 107.  Thus, this court will recommend dismissal as against this defendant.

Plaintiff states that he saw Dr. Kluwe on March 12, 2001, and at that time, Dr. Kluwe stated that "there wouldn't be any kind of treatment until the paper work is sent to Albany to the Chief medical officer." Amended Complaint at ¶ 22.  There are no

17

further allegations regarding Dr. Kluwe or whether he was subsequently involved in plaintiff's medical care.  In plaintiff's memorandum of law, he alleges that he did not receive his treatments until 2002, but nowhere in the complaint does he allege claims against any defendant that are within the statute of limitations.  Although plaintiff alleges that the defendants were involved in a "continuing violation", the complaint itself does not allege *any* actions by *any* defendant that occurred within the statute of limitations.  Thus, as the complaint is written, it may be dismissed.

**6.**   **Dismissal With or Without Prejudice**

This court is recommending dismissal of this case, however, because the plaintiff is pro se, great liberality must be afforded to him.  The Second Circuit has held that when the court dismisses a pro se action on the pleadings, the plaintiff should be given an opportunity to amend his complaint to state a claim. *See Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991) (citations omitted)(court should not dismiss without granting leave to amend *at least* once when the complaint gives "any indication" that a valid claim may be stated).

Although the court has ordered plaintiff to amend once, and will deny his current motion to amend because he has not stated any claims substantively against defendant Wright, nor within the statute of limitations as against any other defendant, the court will recommend dismissing the complaint *without prejudice* to plaintiff attempting to amend his complaint to state a proper claim as against defendants

18

Wright, Lecuyer, and Kluwe. The court notes that plaintiff alleges that his treatment was ordered by Dr. Rogers on December 18, 2000 (after he states that he was transferred to Bare Hill), but he did not get his treatments until 2002.[8] However, he does not make any claims of delay by named Bare Hill defendants, nor does plaintiff claim that these defendants knew about Dr. Roger's order.

There is no indication how these individuals were involved in any constitutionally inadequate medical care within the statute of limitations or at least beginning prior to April of 2001 and continuing subsequent to that date. The court will give plaintiff another chance to state a claim as against the two Bare Hill defendants. With respect to defendant Wright, although the proposed second amended complaint does not state a claim against him because plaintiff makes conclusory allegations of policy and forms, it is conceivable that plaintiff could state a claim if he were more clear in his allegations. Thus, the court will also recommend dismissing the complaint without prejudice as to defendant Wright.

The real problem is that neither defendant Lecuyer nor defendant Kluwe have been served in this action. If plaintiff should submit a proposed amended complaint, and the court should approve its filing, plaintiff will have to determine the whereabouts of these two defendants in order to have them served with process.

---

[8] Plaintiff alleged this fact only in his memorandum of law in opposition to defendants' motion.

19

**WHEREFORE,** based on the above, it is

**ORDERED,** that plaintiff's motion to amend (Dkt. No. 25) is **DENIED WITHOUT PREJUDICE**, and it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No.21) be **GRANTED** as to defendant **MAMUS**, and the complaint **DISMISSED WITH PREJUDICE AS TO DEFENDANT MAMUS**, and it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 21) be **GRANTED** as to defendant **WRIGHT**, and the complaint **DISMISSED WITHOUT PREJUDICE AS TO DEFENDANT WRIGHT**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITHOUT PREJUDICE** as to defendants **KLUWE and LECUYER** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITH PREJUDICE** as to defendant **COHEN** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and it is further

**RECOMMENDED,** that if the court adopts this recommendation, the plaintiff be afforded **FORTY FIVE (45) DAYS** from the date of the District Judge's order within which to file a proposed amended complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections

20

shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated: June 27, 2005

_____

Hon. Gustave J. DiBianco
U.S. Magistrate Judge

21